FILED DATE: 5/3/2024 3:00 PM   2024CH04116

FILED
5/3/2024 3:00 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH04116
Calendar, 10
27548503

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| BIANCA RAYA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEAD JOHNSON NUTRITION COMPANY and MEAD JOHNSON & COMPANY, LLC,<br><br>Defendants. | 2024CH04116 |

## CLASS ACTION COMPLAINT

1. Plaintiff Bianca Raya ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendant Mead Johnson Nutrition Company and Defendant Mead Johnson & Company, LLC (collectively, "Defendant" or "Mead Johnson"), for its knowing, reckless, and/or intentional practice of failing to disclose the presence or material risk of Heavy Metals in its Enfamil® infant formulas ("Products" or "Infant Formulas").[1] The Infant Formulas are sold in Illinois and throughout the United States and do not conform to their packaging. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of the risk or presence of Heavy Metals on the Products' packaging, and restoring monies to the members of the proposed Class. Plaintiff alleges the following based upon personal

---

[1] As used herein, "Heavy Metals" includes arsenic, cadmium, and lead. "Products" or "Infant Formula(s)" as to the Heavy Metals allegations refer to the following Mead Johnson powdered infant formula products: Enfamil A.R., Enfamil Gentlease, Enfamil Enspire Gentlease, Enfamil NeuroPro, Enfamil NeuroPro Sensitive, Enfamil Nutramigen, and Enfamil ProSobee. Discovery may reveal additional products that contain Heavy Metals and/or the presence of additional heavy metals. Plaintiff reserves her right to amend and include any such additional products or heavy metals in this action.

FILED DATE: 5/3/2024 3:00 PM    2024CH04116

knowledge as well as investigation by her counsel as to herself, and as to all other matters, upon information and belief. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

2.      Mead Johnson is one of the primary manufacturers of infant formula in the United States and previously held 39.6% of the market share for powdered infant formula.[2] As a trusted manufacturer and vendor of products consumed exclusively by babies and young children, it carries a duty of the highest importance to implement and maintain quality control when manufacturing its products. A company that sells essential products, such as Defendant who sells infant formula, must not knowingly fail to ensure the safety of its products or allow dangerous toxins or contaminants, such as Heavy Metals, to be consumed by its unsuspecting consumers. Rather, these companies have a duty to disclose material risks of contamination—allowing consumers to make informed decisions about the risks they are willing to take (especially with the health of their infants) and assess the true value of the product they are considering for purchase. Defendant failed to do so in this case.

3.      Defendant's Products contain dangerous toxins: Heavy Metals. As detailed below, individuals, especially infants, who consume Heavy Metals risk developing serious adverse health effects – a risk which most consumers strongly prefer to avoid in food they feed children (who are more vulnerable to those risks than others). Yet, Defendant chose to sell itself to new parents as a trusted company, without disclosing that the formula contained or had a material risk of containing

---

[2] *Market Share of the Leading Vendors of Baby Formula (Powder) in the United States in 2016, Based on Dollar Sales*, available at https://www.statista.com/statistics/443975/market-share-of-the-leading-us-baby-formula-powder-companies/ (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

Heavy Metals (the "Omissions"), which would be material to any parent purchasing formula for their infant.

4.      Infants rely on breastmilk and/or infant formula for their nutrition and growth. The U.S. Dietary Guidelines for Americans and the American Academy of Pediatrics recommends breastfeeding babies exclusively for about six months from birth and continuing afterwards along with introduction of solid foods until they are 12 months old and beyond.[3]  However, according to the Centers for Disease Control and Prevention ("CDC"), only 46.3% of babies under three months old are exclusively breastfed, and the percentage of babies exclusively breastfed through six months drops to 25.8%.[4] For babies younger than six months, the CDC recommends that breast milk or infant formula are the only things they eat for their nutrition, and while supplementing with some solid food, breastmilk or infant formula is recommended up to when they are 24 months old.[5] Therefore, a significant number of babies rely on infant formula for their growth and nutrition in the first year of their lives and beyond.

5.      Reasonable parents, like Plaintiff, trust and depend on manufacturers, like Defendant, to sell infant formula that is healthy, nutritious, and free from the presence or material risk of harmful toxins, contaminants, and chemicals. They certainly expect the formula they feed their infants to be free of the risk or presence of Heavy Metals, substances known to have significant and unsafe developmental and health consequences as detailed herein.

---

[3] CDC, *Infant and Toddler Nutrition: Recommendation and Benefits*, available at
https://www.cdc.gov/nutrition/infantandtoddlernutrition/breastfeeding/recommendations-benefits.html  (last accessed April 29, 2024).
[4] CDC, *Facts: Key Breastfeeding Indicators*, available at
https://www.cdc.gov/breastfeeding/data/facts.html  (last accessed April 29, 2024).
[5] CDC, *When, What, and How to Introduce Solid Foods*, available at
https://www.cdc.gov/nutrition/InfantandToddlerNutrition/foods-and-drinks/when-to-introduce-solid-foods.html (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

6.     Consumers lack the knowledge and opportunity to determine whether Defendant's Products do in fact contain (or have a material risk of containing) Heavy Metals or to ascertain the true nature of the ingredients and quality of the Products. Reasonable consumers therefore must and do rely on Defendant to properly and fully disclose what its Products contain. This is especially true for the risk or presence of Heavy Metals that are being fed to hours-, days- or months-old babies. Such information would be material to any reasonable parent's purchasing decisions.

7.     Defendant's packaging is designed to induce reasonable consumers to believe in the high quality and safety of its infant formula while omitting any information about the inclusion (or material risk of inclusion) of Heavy Metals.

8.     For example, the packaging emphasizes that the Infant Formulas are healthy and made with nutritious ingredients that help support proper development and growth:[6]

 

9.     The packaging on the Infant Formulas also stresses that there are no detrimental, harmful, and genetically engineered ingredients:[7]

---

[6] https://www.enfamil.com/products/enfamil-neuropro-infant-formula/powder-tub-20-7-oz-tub/ (last accessed April 29, 2024).
[7] https://www.enfamil.com/products/enfamil-neuropro-gentlease-formula/powder-tub-19-5-oz-tub/ (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM    2024CH04116




10.    On these packages and others, Defendant states the Infant Formulas contain nutritious ingredients such as Docosahexaenoic Acid ("DHA"), prebiotics such as human milk oligosaccharides ("HMO"), probiotics, and desirable (naturally occurring) minerals such as selenium.







FILED DATE: 5/3/2024 3:00 PM  2024CH04116

11.     Based on the messaging and impression communicated by the packaging and the material nondisclosures, no reasonable consumer could expect or understand that the Infant Formulas contained or risked containing Heavy Metals. This is especially true as the development and physical risks created by ingestion of Heavy Metals by infants are well-recognized.

12.     Defendant's website provides further context to demonstrate that the Products' packaging is deceptive by promising a healthy product that poses no risks to any infants. Specifically, Defendant promises on its website that: (1) Defendant "[s]upport[s] the brain in everything" it does with products that "are excellent for routine, everyday feeding;"[8] (2) "[t]he health and safety of infants and children is [Defendant's] top priority," and it is "committed to providing a high quality and safe products [sic] for [its] littlest consumers;"[9] (3) Defendant's "products undergo extensive quality and safety checks throughout the manufacturing process— from raw materials to finished product" and that "samples from every batch [it] produce[s] are tested to ensure the product meets [its] stringent quality standards;"[10] and (4) "[p]arents can be assured that our infant formulas are safe and nutritious feeding options for their infants."[11] These representations are each in direct contradiction to the Omissions.

13.     On information and belief, Defendant was knowingly, recklessly, and/or intentionally selling Infant Formulas that contained or risked containing detectable levels of arsenic, cadmium, and/or lead.

---

[8] https://www.enfamil.com/why-enfamil/enfamil-formula-family/ (last accessed April 29, 2024).
[9] https://www.enfamil.com/why-enfamil/quality-assurance/ (last accessed April 29, 2024).
[10] *Id.*
[11] *Id.*

FILED DATE: 5/3/2024 3:00 PM    2024CH04116

14.     Independent testing also confirmed the presence of Heavy Metals in two of Defendant's Infant Formulas:[12]

| Infant Formula | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) |
|---|---|---|---|
| Enfamil ProSobee Soy Infant Formula | 6.2* | 6.9 | 7.8 |
| Enfamil Infant – Infant Formula Milk-Based with Iron, 0-12 months | < 2.2 | 0.7* | 2.0 |

15.     Arsenic, cadmium, and lead are all known to pose health risks to humans, and particularly to infants.[13]

16.     Exposure to Heavy Metals has significant and dangerous health consequences. A 2021 report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform highlighted the material risk of the inclusion of Heavy Metals in baby food, spurred by the knowledge that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development."[14]

17.     Despite the known health risks, Defendant knowingly chose to not disclose to consumers that the Infant Formulas contain (or have a material risk of containing) Heavy Metals.

---

[12] Healthy Babies Bright Futures Report: *What's in My Baby's Food?*, at 20, available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed April 29, 2024) ("HBBF Report").

[13] *See*, *generally*, *id.*

[14] U.S. House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury," February 4, 2021, available at https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed April 29, 2024) ("Congressional Committee Report"); *see also* U.S. House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Staff Report, "New Disclosures Show Dangerous Levels of Toxic Heavy Metals in Even More Baby Foods," September 29, 2021, available at https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/ECP%20Second%20Baby%20Food%20Report%209.29.21%20FINAL.pdf (last accessed April 29, 2024) ("Second Congressional Committee Report").

Nowhere on the Infant Formulas' packaging is it disclosed that they contain (or have a material risk of containing) Heavy Metals.

18.     The Infant Formulas' packaging does not include any type of disclaimer or disclosure regarding the presence of Heavy Metals that would inform consumers of their presence or risk. Likewise, nothing on the packaging states that ingestion of Heavy Metals can be unsafe or accumulate over time resulting in developmental issues, poisoning, injury, and/or disease.

19.     Instead, to induce reasonable consumers to believe in the quality and safety of its Products and to justify a price that reflects a premium, Defendant chose to focus on promoting the Infant Formulas on its packaging as high quality and made with nutritious ingredients.

20.     Defendant's marketing strategy reflects the concerns raised by the World Health Organization ("WHO") and UNICEF in their report acknowledging the troubling marketing efforts by infant formula milk manufacturers.[15] This report raises deep concerns over the lasting and pervasive negative effects from the false and misleading information received by parents such as Plaintiff and the Class members through such aggressive marketing efforts by infant formula manufacturers such as Defendant.[16]

21.     Based on Defendant's packaging and related omissions, no reasonable consumer had any reason to know or expect that the Infant Formulas contained Heavy Metals. Furthermore, reasonable parents, like Plaintiff and the Class members, who were feeding the Infant Formulas to

---

[15] WHO, *How the Marketing of Formula Milk Influences our Decisions on Infant Feeding*, February 22, 2022, available at https://www.who.int/teams/maternal-newborn-child-adolescent-health-and-ageing/formula-milk-industry (last accessed April 29, 2024).

[16] National Public Radio, *Infant Formula Promoted in 'Aggressive' and 'Misleading' Ways, Says New Global Report*, March 1, 2022, available at https://www.npr.org/sections/goatsandsoda/2022/03/01/1082775961/infant-formula-promoted-in-aggressive-and-misleading-ways-says-new-global-report (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM    2024CH04116

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

their babies (multiple times a day) would consider the mere presence (or risk) of Heavy Metals a material fact when considering whether to purchase the Infant Formulas.

22.     Defendant knows its customers trust the quality of its Products that are manufactured for the most vulnerable population – infants – and expect the Infant Formulas to be properly and safely manufactured and free from the risk and actual presence of Heavy Metals. Defendant also knows its consumers seek out and wish to purchase infant formula that possess nutritious ingredients free of toxins, contaminants, or chemicals, and that these consumers will pay for infant formula they believe possess these qualities. Defendant also knows no reasonable consumer would knowingly provide his or her children with infant formula that contained Heavy Metals.

23.     Defendant knew that parents would find the Omissions material when deciding whether to purchase the Infant Formulas and that it was in a special position of public trust to those consumers.

24.     The material Omissions are deceptive, misleading, unfair, and/or false because the Infant Formulas were manufactured in such a way that they contained (or risked containing) undisclosed Heavy Metals.

25.     The Omissions allowed Defendant to capitalize on, and reap enormous profits from, reasonable consumers who paid a premium price for Infant Formulas that did not disclose material information as to the Products' true quality and value. Defendant continues to wrongfully induce consumers to purchase the Infant Formulas without full disclosure of the Omissions.

26.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

to and including the present, purchased for household use and not resale any of Defendant's Infant Formulas.

## JURISDICTION AND VENUE

27.     This Court may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States because Defendant maintains its retail sales team in Cook County, Defendant knowingly conducts business in Illinois, and Plaintiff's claims arise out of Defendant's unlawful in-state actions, as Defendant marketed and sold the Infant Formulas throughout the State, including within Cook County.

28.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because Defendant's retail sales team is located in Cook County, is doing business in Cook County, and thus resides there under § 2-102.

## THE PARTIES

29.     Plaintiff Bianca Raya is, and at times relevant hereto was, a citizen of the State of Illinois and currently resides in Rock Island County in the State of Illinois. She purchased the Infant Formula, including Enfamil® Nutramigen and Enfamil® Gentlease, for household use.

30.     Plaintiff purchased the Infant Formula for her child from Walmart, Target, and Walgreens in Moline, Illinois, from approximately February 2023 until December 2023.

31.     Plaintiff believed she was feeding her child healthy and nutritious Infant Formula. Prior to purchasing the Infant Formulas, Plaintiff saw and relied upon the packaging of the Infant Formulas. During the time she purchased and fed her child the Infant Formula, and due to the Omissions by Defendant, she was unaware the Infant Formulas contained (or had a material risk of containing) Heavy Metals and would not have purchased the Infant Formulas if that information

10

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

had been fully disclosed. Plaintiff would be willing to purchase Enfamil® products in the future if she could be certain that they do not contain (or have a material risk of containing) Heavy Metals.

32.     As a result of Defendant's intentionally, recklessly, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid the purchase price or a price premium for the Infant Formulas that did not deliver what was promised by Defendant.  Plaintiff paid the purchase price on the reasonable assumptions that the packaging was accurate, the Infant Formulas were free of Heavy Metals and posed no potential harm to the physical and mental growth of her infant – long term or short term. Plaintiff would not have paid this money had she known the truth about the Omissions.  Further, should Plaintiff encounter the Infant Formulas in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Infant Formulas. Damages can be calculated through expert testimony at trial.

33.     Defendant Mead Johnson Nutrition Company is a Delaware corporation with its headquarters located at 2400 West Lloyd Expressway in Evansville, Indiana, in Vanderburgh County. Mead Johnson & Company, LLC is a wholly owned subsidiary of Mead Johnson Nutrition Company, with its headquarters at 2400 West Lloyd Expressway in Evansville, Indiana, in Vanderburgh County. The retail sales team for Mead Johnson & Company, LLC is located at 225 North Canal Street, Chicago, Illinois, in Cook County. In June 2017, Mead Johnson Nutrition Company was acquired by Reckitt Benckiser Group PLC, whose U.S. headquarters is located at 399 Interpace Parkway, Parsippany, New Jersey.

34.     Defendant, one of the largest producers of infant formula products in the world, has formulated, developed, manufactured, labeled, distributed, marketed, advertised, and sold the

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

Infant Formulas under the Enfamil® name throughout the United States, including in this State. Defendant has done so continuously from May 3, 2018, to the present (the "Relevant Period").

35.     Defendant knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Infant Formulas that did not disclose the presence (or risk) of Heavy Metals in the Infant Formulas. Defendant is also responsible for sourcing ingredients, manufacturing the Products, and conducting all relevant quality assurance protocols, including testing of both the Products and their ingredients.

36.     Plaintiff relied upon the Infant Formulas' packaging and the material Omissions, which was disseminated by Defendant and its agents in this State through the material Omissions from the packaging.   The Omissions were nondisclosed material content that a reasonable consumer would consider important in purchasing the Infant Formulas.

37.     The Infant Formulas, at a minimum, include:

(a)     Enfamil® A.R.;



FILED DATE: 5/3/2024 3:00 PM   2024CH04116

(b)     Enfamil® Gentlease;



FILED DATE: 5/3/2024 3:00 PM    2024CH04116

(c)    Enfamil® Enspire Gentlease;



(d)    Enfamil® NeuroPro;



(e)   Enfamil® NeuroPro Sensitive;



(f)   Enfamil® Nutramigen; and



FILED DATE: 5/3/2024 3:00 PM    2024CH04116

(g)    Enfamil® ProSobee.



**FACTUAL ALLEGATIONS**

**I.    DEFENDANT KNEW OR SHOULD HAVE KNOWN OF THE HEALTH RISKS PRESENTED TO INFANTS AND CHILDREN FROM HEAVY METALS AND THE LIKELIHOOD THEY WERE PRESENT IN ITS PRODUCTS**

38.    While there are no U.S. federal regulations regarding acceptable levels of Heavy Metals in infant formulas, it is not due to a lack of risk. According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, "No level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants."[17]

39.    Arsenic, cadmium, and lead—the Heavy Metals found in the Infant Formulas—are neurotoxins, or poisons, which affect the nervous system. Exposure to these Heavy Metals

---

[17] New York Times, *Some Baby Food May Contain Toxic Metals, U.S. Reports*, available at https://www.nytimes.com/2021/02/04/health/baby-food-metals-arsenic.html (last accessed April 29, 2024) ("Some Baby Food May Contain Toxic Metals").

FILED DATE: 5/3/2024 3:00 PM 2024CH04116

"diminish[es] quality of life, reduce[s] academic achievement, and disturb[s] behavior, with profound consequences for the welfare and productivity of entire societies."[18]

40. The Heavy Metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder ('ADHD')."[19] Even when trace amounts are found in food, these Heavy Metals can alter the developing brain and erode a child's intelligence quotient ("IQ").[20]

41. Because Heavy Metals accumulate in the body, including in the kidneys and other internal organs, the risk they pose grows over time and can remain in one's body for years.[21]

42. Due to their smaller physical size and still-developing brain and organs, infants and toddlers are particularly susceptible to the toxic effects of Heavy Metals because "[t]hey also absorb more of the heavy metals that get into their bodies than adults do."[22]

43. Of additional concern to developing infants are the health risks related to simultaneous exposure to multiple Heavy Metals as "co-exposures can have interactive adverse effects."[23] Heavy Metals disturb the body's metabolism and cause "significant changes in various

---

[18] HBBF Report, *supra*, at 13.
[19] *Id.* at 6.
[20] Congressional Committee Report, *supra*, at 1.
[21] *See* Consumer Reports, *Heavy Metals in Baby Food: What You Need to Know* (Aug. 16, 2018, updated June 27, 2023), available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed April 29, 2024) ("Consumer Reports: Heavy Metals in Baby Food").
[22] *Id.*
[23] Morello-Frosch R., Cushing L.J., Jesdale B.M., Schwartz J.M., Guo W., Guo T., Wang M., Harwani S., Petropoulou S.E., Duong W., Park J.S., Petreas M., Gajek R., Alvaran J., She J., Dobraca D., Das R., Woodruff T.J., *Environmental Chemicals in an Urban Population of Pregnant Women and Their Newborns from San Francisco*. Environ Sci Technol. 2016 Nov 15;50(22):12464-12472. doi: 10.1021/acs.est.6b03492. Epub 2016 Oct 26. PMID: 27700069; PMCID: PMC6681912. Available at https://stacks.cdc.gov/view/cdc/80511 (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

biological processes such as cell adhesion, intra- and inter-cellular signaling, protein folding, maturation, apoptosis, ionic transportation, enzyme regulation, and release of neurotransmitters."[24]

44.     Exposure to Heavy Metals, even in small amounts, can lead to life-long effects. According to Victor Villarreal, Ph.D., Assistant Professor in the Department of Educational Psychology at the University of Texas at San Antonio who has studied the effects of heavy metals on childhood development, "[t]he effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."[25]

45.     Because Heavy Metals can bioaccumulate in the body, even regular consumption of small amounts can increase the material risk of various health issues, including the material risk of bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes.[26]

46.     As Dr. James E. Rogers, the director of food safety research and testing at Consumer Reports, has said "[t]*here is no safe level of heavy metals*, so the goal should be to have no measurable levels of any heavy metal in baby and toddler foods."[27] This rings particularly true when considering that generally, babies who are 12 months or younger heavily rely on infant formula as a key source of nutrients and that unless breastmilk is an option, formula is the only food babies younger than five months can eat for their development and growth.

---

[24] Jaishankar, M., Tseten, T., Anbalagan, N., Mathew, B. B., & Beeregowda, K. N. (2014), *Toxicity, Mechanism and Health Effects of Some Heavy Metals*. Interdisciplinary toxicology, 7(2), 60–72. Available at https://doi.org/10.2478/intox-2014-0009 (last accessed April 29, 2024).

[25] Consumer Reports: Heavy Metals in Baby Food, *supra*.

[26] *Id*.

[27] Consumer Reports, *Congressional Report Finds More Problems With Heavy Metals in Baby Food* (Sept. 29, 2021, updated Oct. 20, 2021), available at https://www.consumerreports.org/food-safety/problems-with-heavy-metals-in-baby-food-congressional-report-a6400080224/#:~:text=%E2%80%9CThere%20is%20no%20safe%20level,research%20and%20testing%20at%20CR (last accessed April 29, 2024) (emphasis added).

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

47.     Research continues to confirm that exposures to food containing arsenic, cadmium, and lead cause "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[28]

48.     The FDA and the WHO have declared Heavy Metals "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[29]

*Arsenic*

49.     The Infant Formulas contain (or have a material risk of containing) arsenic, which can cause cognitive deficits in children who are exposed early in life, and even neurological problems in adults who were exposed as infants.[30] "[E]ven low levels of arsenic exposure can impact a baby's neurodevelopment."[31] "Studies have shown that consuming products with arsenic over time can lead to impaired brain development, growth problems, breathing problems, and a compromised immune system."[32]

50.     Arsenic exposure can also cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, and damage children's central nervous systems and cognitive development.[33] Exposure to arsenic can also cause diabetes, atherosclerosis, and cardiovascular disease.[34]

---

[28] HBBF Report, *supra*, at 1.
[29] Congressional Committee Report, *supra*, at 2.
[30] HBBF Report, *supra*, at 13.
[31] Senators' Letter to the FDA (June 22, 2021), available at https://www.klobuchar.senate.gov/public/_cache/files/9/9/996f2cad-5295-432b-a543-f69312988a78/37D015A1AC9DDF0E31B341F629469169.6.22.2021-formatted-letter-to-fda-on-baby-food-recall.pdf (last accessed April 29, 2024).
[32] *Id.*
[33] Congressional Committee Report, *supra*, at 10.
[34] States J.C., Singh A.V., Knudsen T.B., Rouchka E.C., Ngalame N.O., Arteel G.E., et al. (2012), *Prenatal Arsenic Exposure Alters Gene Expression in the Adult Liver to a Proinflammatory State Contributing to Accelerated Atherosclerosis,* PLOS ONE 7(6): e38713. Available at https://doi.org/10.1371/journal.pone.0038713 (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM    2024CH04116

51.     Arsenic can cause cancer in humans, as well as diabetes and atherosclerosis, and potentially cardiovascular disease when ingested chronically.[35] Chronic exposure to arsenic has also been associated with dermatological lesions and malignancies.[36]

52.     Moreover, "[t]here is no evidence that the harm caused by arsenic is reversible."[37]

53.     Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and FDA have set limits concerning the allowable limit of arsenic at 10 ppb for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA as a maximum contaminant level). The FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[38]

54.     Although the FDA has not set the action level for arsenic in infant formulas specifically, "the FDA prioritizes monitoring and regulating products that are more likely to be consumed by very young children."[39]

55.     Despite this, laboratory tests indicate that Defendant sold Products containing undisclosed arsenic levels at 7.9 ppb, an amount that is especially concerning considering the amount of infant formula consumed by developing babies.

---

[35] *Id.*

[36] Genuis SJ, Schwalfenberg G, Siy A-KJ, Rodushkin I (2012), *Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations,* PLOS ONE 7(11): e49676. Available at https://doi.org/10.1371/journal.pone.0049676 (last accessed April 29, 2024) ("Toxic Element Contamination of Natural Health Products").

[37] HBBF Report, *supra*, at 3.

[38] Toxic Heavy Metals in Popular Baby Foods, *supra*; *see also* 21 C.F.R. §165.110(b)(4)(iii)(A).

[39] NutritionInsight.com, *FDA Studies Reveal Drop in Infant Rice Cereal's Arsenic Levels* (March 9, 2020), available at https://www.nutritioninsight.com/news/fda-studies-reveal-drop-in-infant-rice-cereals-arsenic-levels.html (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM    2024CH04116

*Cadmium*

56.     The Infant Formulas also contain (or have a material risk of containing) cadmium, which has been shown to cause anemia, liver disease, and nerve or brain damage in animals that eat or drink it.

57.     Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage. Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at exposure levels common among U.S. children[.]"[40]

58.     Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure."[41] The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens, and the EPA has likewise determined that cadmium is a probable human carcinogen.[42] Compounding such concerns is the fact that cadmium has a prolonged half-life as it "sequesters in [human] tissue."[43]

59.     The EPA has set a maximum contaminant level for cadmium in drinking water of 5 ppb (*see* 40 C.F.R. §141.62); the FDA has set a maximum level in bottled water to 5 ppb; and the WHO set a maximum cadmium level in drinking water to 3 ppb.[44]

60.     Despite this, laboratory tests indicate that Defendant sold Products containing undisclosed cadmium levels as high as 6.8 ppb.

---

[40] HBBF Report, *supra*, at 14.
[41] *Id.*
[42] CDC, Agency for Toxic Substances and Disease Registry, *Public Health Statement for Cadmium*, available at https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=46&toxid=15 (last accessed April 29, 2024).
[43] Toxic Element Contamination of Natural Health Products, *supra*.
[44] Congressional Committee Report, *supra*, at 29.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

*Lead*

61.     The Infant Formulas contain (or have a material risk of containing) lead, which is "reasonably anticipated to be [a] human carcinogen[]".[45]

62.     Lead exposure can seriously harm the brain and nervous system in infants and children and is associated with a range of negative health outcomes such as behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.

63.     Exposure to lead in foods builds up over time. Build-up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

64.     Even very low exposure levels to lead can "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[46] The FDA, CDC, American Academy of Pediatrics ("AAP"), and the WHO have all stated there is no safe level of lead.[47]

---

[45]American Cancer Society, *Known and Probable Carcinogens*, last revised August 14, 2019, available at https://www.cancer.org/cancer/cancer-causes/general-info/known-and-probable-human-carcinogens.html (last accessed April 29, 2024).

[46] HBBF Report, *supra*, at 13.

[47] FDA, *Lead in Food and Foodwares*, available at https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=Although%20no%20safe%20level%20for,blood%20(%C2%B5g%20%2FdL) (last accessed April 29, 2024); CDC, *Health Effects of Lead Exposure*, available at https://www.cdc.gov/nceh/lead/prevention/health-effects.htm (last accessed April 29, 2024); AAP, Lead Exposure in Children, available at https://www.aap.org/en/patient-care/lead-exposure-in-children/#:~:text=How%20Much%20Lead%20is%20Safe,Prevention%20recommends%20evaluation%20and%20intervention (last accessed April 29, 2024); WHO, *Lead Poisoning*, available at https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health#:~:text=The%20neurological%20and%20behavioural%20effects,and%20learning%20problems%20(1) (last accessed April 29, 2024); *see also* USA Today, *FDA: Recalled Applesauce Pouches Had Elevated Lead Levels and Another Possible Contaminant* (Jan. 5, 2024), available

FILED DATE: 5/3/2024 3:00 PM  2024CH04116

65.     Lead is extremely toxic, and its effects cannot be reversed or remediated.[48]

66.     One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[49]  Additionally, studies have established a link between lead exposure and ADHD.[50]

67.     Although there is no federal standard for lead in baby food, health experts, including the AAP, the Environmental Defense Fund, and Consumer Reports, have agreed that lead in baby foods should not exceed 1 ppb.[51]

68.     Despite this, laboratory tests indicate Defendant sold products containing undisclosed lead levels as high as 6.5 ppb.[52]

69.     The Heavy Metals – arsenic, cadmium, and lead– are significant detriments to children.

70.     The FDA has acknowledged that "exposure to [these  heavy] metals are [sic] likely to have the most significant impact on public health. [53]

71.     While the FDA is working on action levels related to heavy metals in baby foods, importantly, however, and relevant to this lawsuit, the FDA's action levels do not require disclosure of the presence of Heavy Metals on the packaging of products that are placed in the

---

at https://www.usatoday.com/story/money/food/2024/01/05/applesauce-pouch-recall-contamination-spreads/72121869007/ (last accessed April 29, 2024).
[48] Consumer Reports: Heavy Metals in Baby Food, *supra*.
[49]  HBBF Report, *supra*, at 7.
[50] Congressional Committee Report, *supra*, at 12.
[51] Toxic Heavy Metals in Popular Baby Foods, *supra*.
[52] HBBF Report, *supra,* at 20, 34.
[53] FDA, *Environmental Contaminants in Food*, available at https://www.fda.gov/food/chemical-contaminants-pesticides/environmental-contaminants-food (last accessed April 29, 2024) ("Environmental Contaminants in Food").

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

market. Action levels only set limits for determining when products cannot be placed into the market.

72.     The presence of Heavy Metals and/or other undesirable toxins or contaminants in baby foods have been confirmed by investigations and reports by the U.S. Congress, Healthy Babies Bright Futures,[54] Consumer Reports,[55] and Politico,[56] and studies by the FDA,[57] University of Miami, the Clean Label Project, and Ellipse Analytics.[58]

73.     Both the Congressional Committee Report, published on February 4, 2021, which acknowledged that Heavy Metals "can endanger infant neurological development,"[59] followed by a second report published on September 29, 2021, revealed alarming levels of Heavy Metals in baby foods.[60] The Congressional Committee Report acknowledged that Heavy Metals—including arsenic, cadmium, and lead—were present in "significant levels" in numerous commercial baby food products.[61]

---

[54] HBBF Report at 12, 20, *supra*.

[55] Consumer Reports: Heavy Metals in Baby Food, *supra*.

[56] Politico, *The FDA's Food Failure* (Apr. 8, 2022), available at https://www.politico.com/interactives/2022/fda-fails-regulate-food-health-safety-hazards/ (last accessed April 29, 2024).

[57] FDA, *FDA Total Diet Study Report, Fiscal Years 2018-2020 Elements Data (July 2022)*, available at https://www.fda.gov/media/159751/download?attachment (last accessed April 29, 2024) ("FDA Total Diet Study").

[58] Gardener, et al., *Lead and Cadmium Contamination In A Large Sample of United States Infant Formulas and Baby Foods*, 651 SCI. TOTAL ENVIRON. 1, 822-827 (2019), available at: https://www.sciencedirect.com/science/article/abs/pii/S0048969718334442?via%3Dihub (last accessed April 29, 2024) ("Lead and Cadmium Contamination in Infant Formulas and Baby Foods").

[59] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed April 29, 2024) ("Toxic Heavy Metals in Popular Baby Foods").

[60] Congressional Committee Report, *supra*; Second Congressional Committee Report, *supra*.

[61] Congressional Committee Report, *supra*.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

74.     As such, the knowledge of the risks associated with exposure to Heavy Metals is not a new phenomenon. Defendant knew or should have known the risks associated with the presence of Heavy Metals in foods consumed by infants,[62] and that, over time, these toxins can accumulate and remain in infants' bodies, to their detriment.

75.     Despite the material risk and/or presence of these harmful chemicals, Defendant fails to disclose the presence (or risk) of Heavy Metals in its Products.

## II.     DEFENDANT FALSELY MARKETED THE INFANT FORMULAS AS HEALTHY AND MADE WITH NUTRITIOUS INGREDIENTS BY OMITTING ANY MENTION OF HEAVY METALS

76.     Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells the Infant Formulas throughout the United States, including in this State.

77.     Defendant's Infant Formulas are available at numerous retail and online outlets. The Infant Formulas are widely advertised.

78.     On its website, Defendant markets the Infant Formulas as the "#1 Trusted Brand of Pediatricians & Parents," "#1 trusted brand for brain-building nutrition and immune support," and "#1 infant formula brand recommended by pediatricians."[63]

---

[62] *See*, *e.g*., *FDA Compliance Program Guidance Manual: Toxic Elements in Food and Foodware, and Radionuclides in Food- Import and Domestic*, available at http://wayback.archive-it.org/7993/20170404233343/https://www.fda.gov/downloads/Food/ComplianceEnforcement/UCM073204.pdf (last accessed April 29, 2024); *see also* 21 CFR §172, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFRSearch.cfm?CFRPart=172&showFR=1 (last accessed April 29, 2024).
[63] https://www.enfamil.com/ (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM 2024CH04116

 

79.     On its website, Defendant promises to "[s]upport your baby's development right from the start with brain-building nutrition and MFGM components from the #1 trusted infant formula brand."[64] Defendant represents that "using Enfamil gives you the confidence you've made the right choice for your baby."[65] Defendant boasts and reassures parents of the quality of its products, claiming "we know you've got lots of questions. Relax. We've got you covered. With a complete family of brain-building formulas to fuel the wonder of your little one. From everyday nutrition to specialty formulas."[66]

80.     Defendant touts its innovations to the Infant Formula and provides extensive information about the ingredients in its formulas to consumers throughout its website, including on its Frequently Asked Questions ("FAQ") page.[67]

81.     Based on Defendant's decision to omit any mention of the presence or material risk of Heavy Metals in the Infant Formulas, and to instead package the Infant Formulas as healthy and made with nutritious ingredients, it had a duty to ensure that the Products' packaging was true and not misleading.

---

[64] https://www.enfamil.com/enfamil-neuropro/ (last accessed April 29, 2024).
[65] https://www.enfamil.com/why-enfamil/ (last accessed April 29, 2024).
[66] https://www.enfamil.com/why-enfamil/enfamil-formula-family/ (last accessed April 29, 2024).
[67] https://www.enfamil.com/help-center/nutrients-ingredients/ (last accessed April 29, 2024).

82.    Defendant also had exclusive and/or superior knowledge of the presence or material risk of Heavy Metals in the Infant Formula but chose to not inform consumers.

83.    Defendant intentionally omitted from its packaging any mention of the presence (or material risk) of Heavy Metals in the Infant Formulas in order to induce and mislead reasonable consumers to purchase the Infant Formulas.

84.    With Defendant marketing the Infant Formulas as healthy and made with nutritious ingredients to nourish babies, Defendant clearly recognizes the importance of the Infant Formula to the development of infants.  Indeed, the presence or risk of undisclosed Heavy Metals defeats the purpose of infant formula, which is to nourish babies, a fact touted by Defendant.

85.    As a result of the undisclosed material information on the Infant Formulas' packaging, a reasonable consumer would have no reason to suspect the presence (or material risk) of Heavy Metals in the Infant Formulas without conducting his or her own scientific tests (which are time consuming and expensive) or reviewing third-party scientific testing of these Products.

### III.    DUE TO THE PRESENCE AND MATERIAL RISK OF HEAVY METALS IN THE INFANT FORMULAS, THE PACKAGING WAS MATERIALLY MISLEADING

86.    At all times during the Relevant Period, Defendant knew or should have known the Infant Formulas contained undisclosed Heavy Metals and were not sufficiently tested for the presence and material risk of Heavy Metals.

87.    Defendant's Infant Formulas contained undisclosed levels of Heavy Metals due to Defendant's failure to monitor for the presence of Heavy Metals in its Products and their ingredients.  Defendant was aware of this risk and failed to disclose it to Plaintiff and the Class despite having a duty to disclose.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

88.     Despite the known risks of exposure to Heavy Metals, Defendant has intentionally, recklessly, and/or knowingly sold the Infant Formulas without disclosing to consumers like Plaintiff and the Class the presence or material risk of Heavy Metals.

89.     Defendant knew or should have known that Heavy Metals pose health risks to infants.

90.     Defendant knew or should have known that it owed consumers a duty of care to prevent or, at the very least, minimize the presence of Heavy Metals in the Infant Formulas to an undetectable level.

91.     Defendant knew or should have known it owed consumers a duty of care to adequately test for Heavy Metals in the Infant Formulas and their ingredients.

92.     Defendant knew consumers purchased the Infant Formulas based on the reasonable expectation that Defendant manufactured the Infant Formulas to the highest standards. In fact, Defendant promised as much – at length – on its website:

> Our products meet or exceed all **infant formula requirements set out by the FDA**, which are among the **most rigorous** in the food industry. Each of our manufacturing facilities adheres to safety guidelines among the **most rigorous in the food industry** and our own **stringent quality standards** so that we can assure the highest quality products. Parents can be assured that our infant formulas are safe and nutritious feeding options for their infants when prepared, stored, and handled according to package directions.
>
> Our infant products undergo **extensive quality and safety checks** throughout the manufacturing process—from raw materials to finished product. A representative number of samples from every batch we produce are tested to ensure the product meets our **stringent quality standards**. Each batch of our products is assured to meet our **high quality and safety standards** as verified by our **proprietary Quality Systems** that exist in every manufacturing facility. We distribute our products only if they pass our **strict testing**. We track the path of every ingredient in our infant and toddler products from its initial supplier through all processing stages until it reaches our consumer.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

> The [FDA] has very **specific and rigorous manufacturing standards** for infant formulas and toddler drinks that we adhere to. All Mead Johnson formulas are in compliance with all FDA regulations, including Enfamil® NeuroPro™, Enfamil® Enspire™, Enfamil® Gentlease®, and Nutramigen®. Our products meet or exceed all **infant formula requirements set out by the FDA**, which are among the **most rigorous** in the food industry. The amounts of ingredients in Enfamil Infant Formulas are all within required guidelines established to ensure the safety and nutritional quality of infant formulas. **We are committed to the most stringent manufacturing, packaging, and quality assurance procedures**.[68]

Based on consumers' expectation that Defendant manufactured the Infant Formulas to the highest standards, Defendant knew or should have known consumers reasonably inferred that Defendant would hold the Infant Formulas to the highest standards for preventing the inclusion of Heavy Metals in the Infant Formulas, which would include testing the Products and their ingredients for Heavy Metals.

93.     A recent consumer survey done by Plaintiff's counsel ("Consumer Survey") demonstrates such an expectation.[69]

| Consumer Survey | Yes | No |
|---|---|---|
| Do you expect a company to test for arsenic, cadmium, lead, and/or mercury in infant formula that will be fed to infants? | 91.1% | 8.9% |
| Would you expect a company to disclose if there were detectable levels, or risk, of arsenic, cadmium, lead, and/or mercury in an infant formula? | 91.3% | 8.7% |

94.     Further, Defendant has recognized consumer concern for the possible presence of Heavy Metals in baby food products and infant formulas. As a member of the Infant Nutrition

---

[68] https://www.enfamil.com/why-enfamil/quality-assurance/ (last accessed April 29, 2024) (emphasis added).
[69] All Consumer Survey respondents were parents 18 and over with children aged anywhere from 0 to 4 years old from a majority of states, including Illinois, and all of whom had purchased infant formula within the past 3 years.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

Council of America ("INCA") through its parent company Reckitt Benckiser Group PLC, Defendant joined two other major manufacturers of infant formula products to lobby against the promulgation of California Assembly Bill 899 ("AB 899") in 2023.[70] As introduced, the original version of AB 899 would have required infant formula manufacturers – like Defendant – to test for Heavy Metals in their products and disclose the testing results on the labels.[71] INCA vehemently opposed any disclosure of Heavy Metals to consumers, arguing the proposed measure would "create confusion"[72] among consumers and "create fear and panic,"[73] and cause them to "mistrust" the manufacturers.[74] Furthermore, INCA has argued that such requirements would cause consumers to change their purchasing behaviors.[75]

95.     Based on the foregoing, reasonable consumers, like Plaintiff, would consider the inclusion (or material risk of inclusion) of Heavy Metals a material fact when considering what infant formulas to purchase.

96.     Defendant knew that monitoring for Heavy Metals in the Infant Formulas and their ingredients was not only important, but also critical.

97.     Defendant also knew that monitoring Heavy Metals was likewise important to its consumers to protect their babies.

---

[70] Analysis of AB 899 as amended March 13, 2023, available at
https://billtexts.s3.amazonaws.com/ca/ca-analysishttps-leginfo-legislature-ca-gov-faces-billAnalysisClient-xhtml-bill-id-202320240AB899-ca-analysis-357755.pdf (last accessed April 29, 2024) ("Analysis of AB 899").

[71] *Id.*

[72] *Id.*; *see also* Analysis of AB 899 as amended April 12, 2023, available at
https://trackbill.com/s3/bills/CA/2023/AB/899/analyses/senate-health.pdf (last accessed April 29, 2024).

[73] Analysis of AB 899, *supra*.

[74] *Id.*

[75] *See* Analysis of AB 899 as amended April 12, 2023, available at
https://trackbill.com/s3/bills/CA/2023/AB/899/analyses/senate-health.pdf (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

## IV.   INFANT FORMULAS CAN BE MANUFACTURED WITHOUT MEASURABLE LEVELS OF HEAVY METALS

98.    In contrast to the levels of Heavy Metals found in Defendant's Infant Formulas, other infant formula manufacturers have produced formula products that have non-detectable levels of Heavy Metals.

99.    The Clean Label Project tests products for more than 400 contaminants, including heavy metals, chemicals, and plastics, and presents its Purity Award to companies with products with the lowest levels of the contaminants when compared to other products in a given category.[76]

100.    Bobbie, a manufacturer of infant formula (recognized by the Clean Label Project for manufacturing products that were free from detectable levels of Heavy Metals) was a recipient of the Clean Label Project's Purity Award.[77]

101.    Plaintiff's counsel had Bobbie Organic Infant Formula independently tested and that testing confirmed the presence of Heavy Metals at non-detectable levels:

| Infant Formula | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) |
|---|---|---|---|
| Bobbie Organic Infant Formula | < 2.2 | < 1.3 | < 1.0 |

102.    This testing confirms infant formula manufacturers can manufacture infant formulas with Heavy Metals levels that are not measurable.

---

[76] Clean Label Project Purity Award, available at https://cleanlabelproject.org/purity-award/ (last accessed April 29, 2024).

[77] Business Wire, *Bobbie is First-Ever Infant Formula to Receive the Clean Label Project Purity Award and Certification as a Pesticide-Free Product* (Jan. 25, 2022), available at https://www.businesswire.com/news/home/20220125005905/en/Bobbie-Is-First-Ever-Infant-Formula-To-Receive-The-Clean-Label-Project-Purity-Award-and-Certification-as-a-Pesticide-Free-Product (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

103. Additionally, testing by Consumer Reports identified baby food products with Heavy Metal levels low enough to not cause concern, as well as some products with Heavy Metal levels that were not measurable.[78] "[T]here are ways for [baby food] manufacturers to significantly reduce or eliminate these [heavy] metals from their products."[79]

104. In testing conducted by Consumer Reports, other products had non-detectable levels of Heavy Metals.[80] As stated by Dr. James E. Rogers, the Consumer Reports Director of Food Safety Research and Testing, "Every category of food was represented in that lower-risk group. That indicates that there are ways for manufacturers to significantly reduce or eliminate these [heavy] metals from their products."[81]

105. In the FDA Total Diet Study, it was also demonstrated that infant formulas can be manufactured without detectable levels of Heavy Metals.[82]

106. Moreover, because of public health efforts, exposure to lead has consistently and notably decreased over the past 40 years.[83] These efforts include increasing awareness of the dangers of even low levels of lead exposure to young children.[84] The progress towards decreasing childhood exposure to lead was so impressive that the CDC identified "childhood lead poisoning prevention as 1 of 10 great U.S. public health achievements during 2001 to 2010."[85]

---

[78] Consumer Reports: Heavy Metals in Baby Food, *supra*.
[79] *Id*.
[80] *Id*.
[81] *Id*.
[82] FDA Total Diet Study, *supra*, at 73, 81-82.
[83] Dignam, T., Kaufmann, R. B., LeStourgeon, L., & Brown, M. J. (2019), *Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure*. Journal of Public Health Management and Practice: JPHMP, 25 Suppl 1, Lead Poisoning Prevention (Suppl 1 LEAD POISONING PREVENTION), S13–S22. Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/ (last accessed April 29, 2024).
[84] *Id*.
[85] *Id*.

FILED DATE: 5/3/2024 3:00 PM    2024CH04116

107.    Defendant knew or should have known it could control the levels of Heavy Metals in the Infant Formulas in order to achieve non-detectable or zero levels by adequately monitoring its ingredients for Heavy Metals and adjusting any formulation to reduce ingredients that contained Heavy Metals.

108.    Defendant also knew it was not adequately monitoring and testing for Heavy Metals in the Infant Formulas and their ingredients. Defendant knew its failure to adequately monitor and test for Heavy Metals in the Infant Formulas and their ingredients continued throughout the Relevant Period.

109.    Defendant's marketing was misleading due to its failure to properly and sufficiently monitor and test for Heavy Metals and/or for its failure to disclose on the packaging of the Products the presence (or material risk) of Heavy Metals in the Infant Formulas.

110.    Defendant knew or should have known consumers paid a price premium for its Products and expected Defendant to test and monitor for Heavy Metals and disclose on the packaging of the Products the presence or material risk of Heavy Metals in the Infant Formulas and their ingredients.

111.    At all times during the Relevant Period, Defendant did not monitor or test for Heavy Metals in the Infant Formulas and their ingredients and Defendant did not disclose on the packaging of the Products the presence or material risk of Heavy Metals.

112.    Defendant knew or should have known that consumers reasonably expected it to test for and monitor the presence of Heavy Metals in the Infant Formulas and their ingredients, and to disclose the presence or material risk of any levels of Heavy Metals in its Products.

113.    Defendant knew or should have known the Infant Formulas contained or risked containing Heavy Metals that were inconsistent with its marketing.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

114.    Defendant knew or should have known that, in order to comply with its marketing, consumers expected it to ensure the Infant Formulas and their ingredients were monitored and tested for Heavy Metals, and to disclose the presence (or material risk) of Heavy Metals.

115.    Defendant knew, yet failed to disclose, its lack of adequate testing and/or knowledge of the risk or presence of Heavy Metals in the Infant Formulas and their ingredients.

116.    Defendant's Omissions are false, misleading, and crafted to deceive the public as they create an image that the Infant Formulas are nutritious and safe from the risk or presence of Heavy Metals.  The presence or risk of Heavy Metals defeats the purpose of the Infant Formulas, which is nutrition for infants.

117.    Moreover, reasonable consumers, such as Plaintiff and the Class members, would have no reason to doubt Defendant's statements regarding the quality of the Products.  Defendant's nondisclosure and/or concealment of the presence (or risk) of Heavy Metals in the Infant Formulas alleged herein intended to and did, in fact, cause consumers like Plaintiff and the members of the Class, to purchase Products they would not have or for which they would not have paid a premium price if the true quality of the Products and their ingredients were disclosed.

## V.    DEFENDANT'S PACKAGING MISLED REASONABLE CONSUMERS BASED ON THE MATERIAL OMISSIONS

118.    Defendant's packaging communications misled and deceived reasonable consumers because Defendant actively and knowingly concealed and failed to disclose that the Infant Formulas contained (or had a material risk of containing) Heavy Metals, while representing nutritious quality and characteristics.

119.    Based on the impression given by the packaging communications and Omissions, no reasonable consumer could expect or understand that the Infant Formulas contained (or had a material risk of containing) Heavy Metals.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

120.    The Infant Formula packaging communications include, but are not limited to:

(a)    Enfamil® A.R.: "BRAIN BUILDING," "expert-recommended," "#1 ADDED RICE starch formula," "#1 RECOMMENDED BRAND BY PEDIATRICIANS," "Calcium for strong bones," and "Vitamin C for immune support."

  

(b)    Enfamil® Enspire Gentlease: "with LACTOFERRIN a key protein also found in BREAST MILK & COLOSTRUM," "BRAIN BUILDING," "IMMUNE HEALTH supported by LACTOFERRIN," and "Naturally occurring MFGM components."



35

FILED DATE: 5/3/2024 3:00 PM    2024CH04116

(c)     Enfamil® Gentlease: "BRAIN BUILDING," "expert-recommended," and "#1 RECOMMENDED BRAND BY PEDIATRICIANS."

 

(d)     Enfamil® NeuroPro: "EXCLUSIVE HuMO6 IMMUNE BLEND," "BRAIN BUILDING," "expert-recommended," "inspired by BREAST MILK," "supports IMMUNE HEALTH," "naturally-occurring MFGM components," "#1 RECOMMENDED BRAND BY PEDIATRICIANS," and "Beta Carotene & DHA for baby's eye health" .

 

FILED DATE: 5/3/2024 3:00 PM    2024CH04116

(e)     Enfamil® NeuroPro Sensitive: "BRAIN BUILDING," "expert-recommended," "HMO for IMMUNE SUPPOR," "NON-GMO No Artificial Growth Hormones," and "#1 RECOMMENDED BRAND BY PEDIATRICIANS."

  

(f)     Enfamil® Nutramigen: "BRAIN BUILDING," "#1 RECOMMENDED BRAND BY PEDIATRICIANS" (front and back), "THE ONLY HYPOALLERGIC FORMULA WITH LGG® PROBIOTIC" (front and back), "NO ARTIFICIAL GROWTH HORMONES," and "LGG® probiotic to help support digestive health."

  



(g)     Enfamil® ProSobee: "No artificial colors, flavors or sweeteners" (front), "BRAIN BUILDING," "expert-recommended," "IMMUNE HEALTH Vitamins A, C, E & Selenium" (front), "#1 RECOMMENDED BRAND BY PEDIATRICIANS," "NO ARTIFICAL colors, flavors or sweeteners" (back), and "vitamins A, C & E for IMMUNE SUPPORT" (back).

FILED DATE: 5/3/2024 3:00 PM   2024CH04116







121.    Based on Defendant's Omissions from these communications on the Products' packaging, no reasonable consumer could expect or understand that the Infant Formulas contained (or had a material risk of containing) Heavy Metals.

122.    The Omissions wrongfully convey to consumers that Defendant's Infant Formulas have certain nutritious quality and characteristics that they do not actually possess.

123.    For instance, although Defendant misleadingly causes consumers to believe the Infant Formulas do not contain Heavy Metals due to the material Omissions, the Infant Formulas do in fact contain undisclosed Heavy Metals, which is material information to reasonable consumers.

124.    Plaintiff's counsel had seven of Defendant's Infant Formulas tested and that testing confirmed the presence of undisclosed Heavy Metals at the following levels:

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

| Infant Formula | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) |
|---|---|---|---|
| Enfamil® A.R. | 3.4 | 3.2 | 1.2 |
| Enfamil® Gentlease | 3.7 | 2.6 | 1.7 |
| Enfamil® Enspire Gentlease | 5.0 | 2.3 | < 1.0 |
| Enfamil® NeuroPro | < 2.2 | 2.0 | < 1.0 |
| Enfamil® NeuroPro Sensitive | 5.1 | < 1.3 | 2.3 |
| Enfamil® Nutramigen | 7.9 | 4.6 | 6.5 |
| Enfamil® ProSobee | 6.7 | 6.8 | 3.5 |

125.    Independent testing also confirmed Heavy Metals in two of Defendant's Products:[86]

| Infant Formula | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) |
|---|---|---|---|
| Enfamil ProSobee Soy Infant Formula | 6.2* | 6.9 | 7.8 |
| Enfamil Infant – Infant Formula Milk-Based with Iron, 0-12 months | < 2.2 | 0.7* | 2.0 |

126.    Regardless of level, though, as stated herein, no level of Heavy Metals is safe.[87]

127.    Based on the Omissions, a reasonable consumer would not expect the presence of Heavy Metals, nor would a reasonable consumer be able to detect the presence of Heavy Metals in the Infant Formulas without conducting his or her own scientific tests or reviewing scientific testing conducted on the Products.

---

[86] HBBF Report, *supra*, at 20.
[87] Some Baby Food May Contain Toxic Metals, *supra*.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

128.    In fact, the FDA recently requested $1.2 billion from the U.S. Congress for its Foods Program for initiatives such as reduction of heavy metals in foods for infants and young children.[88] A portion of the funding would be for educational outreach about heavy metals in foods.[89]

129.    Reasonable consumers must and do rely on Defendant to honestly report what the Infant Formulas contain.

130.    Plaintiff relied on the Products' packaging when making her purchasing decisions.

131.    Plaintiff's expectations and reliance are consistent with reasonable consumers as shown by the Consumer Survey recently done by Plaintiff's counsel:

| Consumer Survey | No | Yes |
|---|---|---|
| After seeing the label would you expect arsenic, cadmium, lead, and/or mercury in the infant formula? | 77.8% | 22.2% |

| Consumer Survey | Very important | Important | Not at all important |
|---|---|---|---|
| Please select how important, if at all, would it be to your purchasing decision if the infant formula you purchased contained, or risked containing, even a small amount of arsenic, cadmium, lead, and/or mercury. | 71.0% | 25.4% | 3.6% |

132.    In light of Defendant's communications regarding the quality of the Infant Formulas and its commitment to innovative formulas and nutritious ingredients, Defendant knew

---

[88] Department of Health and Human Services Fiscal Year 2023: *Food and Drug Administration, Justification of Estimates for Appropriations Committees*, available at https://www.fda.gov/media/157192/download?attachment (last accessed April 29, 2024).
[89] *Id.*

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

or should have known the Infant Formulas or their ingredients contained or risked containing Heavy Metals.

133.    Defendant had a duty to ensure the Infant Formulas were not deceptively, misleadingly, unfairly, and/or falsely marketed and all material information was properly and fully disclosed.  For example, as the FDA recently stated in connection with the recall of applesauce due to the presence of lead, "Companies have the responsibility to take steps to assure that the products they manufacture are not contaminated with unsafe levels of heavy metals."[90] Notably, the FDA acknowledges that there is "no known safe level of exposure to lead."[91]

134.    Defendant acted knowingly, recklessly, and/or intentionally with its deceptive packaging based on the material Omissions.

135.    Defendant knew that properly and sufficiently monitoring for Heavy Metals in the Products and their ingredients was not only important, but also critical.

136.    Additionally, Defendant knew or should have been aware that a reasonable consumer would be feeding the Infant Formula multiple times each day to his or her baby, making it a significant source of food and nutrition for the child.  This leads to an infant's repeated exposure to the Heavy Metals, which defeats the purpose of infant formula, *i.e.*, to provide nourishment to infants.

---

[90] Christina Jewett and Will Fitzgibbon, *Lead-Tainted Applesauce Sailed Through Gaps in Food-Safety System*, N.Y. Times, Feb. 27, 2024, available at https://www.nytimes.com/2024/02/27/world/europe/lead-applesauce-food-safety.html?smid=nytcore-ios-share&referringSource=articleShare (last accessed April 29, 2024).
[91] Lead in Food and Foodwares, FDA, March 6, 2024, available at https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=Although%20no%20safe%20level%20for,blood%20(%C2%B5g%20%2FdL%20) (last accessed April 29, 2024).

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

137.     Finally, Defendant knew or should have known it could control the levels of Heavy Metals in the Infant Formulas by properly monitoring their ingredients for Heavy Metals and adjusting any formulation to reduce ingredients that contained or risked containing Heavy Metals.

138.     The Omissions are material and reasonably likely to deceive reasonable consumers, such as Plaintiff, in their purchasing decisions.  This is true especially considering the long-standing campaign by Defendant to market the Infant Formulas as healthy and made with nutritious ingredients, and to induce consumers, such as Plaintiff, to purchase the Products.

139.     The Omissions make the Infant Formulas' packaging deceptive.  Reasonable consumers, like Plaintiff, would consider the facts that Infant Formula contained (or had a material risk of containing) Heavy Metals when considering what infant formula to purchase.

140.     At all times during and throughout the Relevant Period, Defendant knew it was not following proper manufacturing standards when it did not sufficiently or consistently monitor or test the Infant Formulas or their ingredients for Heavy Metals.

141.     Defendant's packaging was misleading due to Defendant's failure to disclose the true quality of the Infant Formulas based on its deficient manufacturing processes and the presence or material risk of the presence of Heavy Metals.

142.     Defendant knew or should have known the Infant Formulas contained or risked containing undisclosed levels of Heavy Metals that were inconsistent with Defendant's packaging.

143.     Defendant knew or should have known that reasonable consumers expected it to have sufficient and adequate manufacturing processes that would ensure the Infant Formulas and their ingredients were monitored and tested for Heavy Metals to ensure compliance with Defendant's packaging.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

144.     Defendant knew or should have known consumers paid premium prices because the Omissions were not disclosed.

145.     The Omissions are material and render the Infant Formulas' packaging deceptive as without full disclosure, reasonable consumers believe the Infant Formulas are high quality, healthy, and nutritious products.

146.     Moreover, reasonable consumers, such as Plaintiff and the Class members, would have no reason to doubt or question Defendant's statements regarding the quality of the Infant Formulas.  Based on the impression given by the packaging, no reasonable consumer could expect or understand the Infant Formula contained (or had a material risk of containing) Heavy Metals.

147.     The Omissions were intended to and did, in fact, cause consumers like Plaintiff and the members of the Class to purchase products they would not have if the true quality of the Products and their ingredients were disclosed or for which they would not have paid a premium price.

148.     As a result of Defendant's deceptive packaging of the Infant Formulas, Defendant was able to generate substantial sales, which allowed Defendant to capitalize on, and reap enormous profits from, consumers who paid the purchase price or premium for the Infant Formulas that were not as advertised.

**PLAINTIFF'S RELIANCE WAS REASONABLE
AND FORESEEN BY DEFENDANT**

149.     Plaintiff read and relied upon the packaging of the Infant Formulas when making her purchasing decisions. Had she known Defendant omitted and failed to disclose the Infant Formula contained (or had a material risk of containing) Heavy Metals, she would not have purchased the Infant Formulas or would not have paid a premium price.

FILED DATE: 5/3/2024 3:00 PM  2024CH04116

150.     A reasonable consumer would consider the packaging of a product when deciding whether to purchase it.

## DEFENDANT'S KNOWLEDGE AND
## NOTICE OF ITS BREACH OF ITS IMPLIED WARRANTIES

151.     Defendant had sufficient notice of its breach of implied warranties.  Defendant has, and had, exclusive knowledge of manufacturing processes, quality control policies, the physical and chemical make-up of the Infant Formulas, and whether the Products and their ingredients contained Heavy Metals.

152.     In 2017 and 2019, the Clean Label Project published results and findings from an investigation of heavy metals in baby and toddler food products, including infant formula. The findings showed the presence of Heavy Metals in Defendant's Infant Formulas. In response to the Clean Label Project's study, Defendant stated that it "specifically monitors the presence of many materials, including arsenic, cadmium, [and] lead . . . to ensure 'safety and high quality.'"[92]

153.     Moreover, Defendant was put on notice by February and September of 2021, when Congress publicly released findings regarding the presence of Heavy Metals in baby foods.[93] The FDA has also released a study showing the presence of Heavy Metals in baby foods, including infant formulas.[94]

---

[92] USA Today, *These Baby Foods and Formulas Tested Positive for Arsenic, Lead, and BPA in New Study* (Oct. 25, 2017), available at https://www.usatoday.com/story/news/nation-now/2017/10/25/these-baby-foods-and-formulas-tested-positive-arsenic-lead-and-bpa-new-study/794291001/ (last accessed April 29, 2024).

[93] Congressional Committee Report, *supra*; Second Congressional Committee Report, *supra*.

[94] FDA Total Diet Study, *supra*, at 73, 81-82.

154.     Defendant was likewise given notice through its membership in INCA, for example, through INCA's lobbying efforts in opposition to AB 899 that would have required infant formula manufacturers to test for and disclose levels of Heavy Metals.[95]

155.     Defendant has not changed its packaging to include any disclaimer on the Omissions.

## PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS

156.     Defendant knew that reasonable consumers such as Plaintiff and the proposed Class members would be the end purchasers of the Infant Formulas and the targets of its advertising, marketing, packaging, and statements.

157.     Defendant intended that the packaging and implied warranties would be considered by the end purchasers of the Infant Formulas, including Plaintiff and the proposed Class members.

158.     Defendant directly marketed to Plaintiff and the proposed Class through its packaging.

159.     Plaintiff and the proposed Class members are the intended beneficiaries of the implied warranties.

## APPLICABILITY OF EQUITABLE TOLLING AND
## THE DISCOVERY RULE TO THE STATUTE OF LIMITATIONS

160.     Fraudulent concealment and/or the discovery rule toll Plaintiff's claims.

161.     The statute of limitations is tolled for all of Plaintiff's statutory consumer protection and common law claims due to Defendant's fraudulent concealment that the Infant Formulas contained (or had a material risk of containing) Heavy Metals. Defendant intentionally concealed these material facts from Plaintiff.

---

[95] Analysis of AB 899, *supra*.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

162.     Defendant knew the Omissions were a material consideration for any parent buying infant formulas.

163.     Defendant violated the relevant state consumer fraud acts by deceiving customers as to the true nature, quality, and makeup of the Infant Formulas.

164.     The discovery rule also protects Plaintiff's Illinois Consumer Fraud and Deceptive Business Practices Act and unjust enrichment claims.

165.     Based on Defendant concealing material facts from Plaintiff, Plaintiff could not reasonably discover that the Infant Formula contained (or had a material risk of containing) Heavy Metals.

166.     Plaintiff did not know that the Infant Formula contained (or had a material risk of containing) Heavy Metals. Instead, Defendant only represented that the Infant Formulas were healthy, nutritious, and made of high-quality ingredients to support growing infants.

## CLASS ACTION ALLEGATIONS

167.     Pursuant to 735 ILCS 5/2-801, Plaintiff brings this action individually and on behalf of the following Class:

> All persons who are residents of Illinois who, from May 3, 2018, to the present, purchased the Infant Formulas for household use, and not for resale (the "Class").

168.     Excluded from the Class are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

169.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

170.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Class in a single action will provide substantial benefits to the parties and Court.

171.    Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

(a)    whether Defendant owed a duty of care;

(b)    whether Defendant owed a duty to disclose;

(c)    whether Defendant knew or should have known that the Infant Formulas and their ingredients contained or risked containing Heavy Metals;

(d)    whether Defendant failed to disclose the Omissions;

(e)    whether the claims of the Plaintiff and the Class serve a public benefit;

(f)    whether Defendant's packaging is false, deceptive, and misleading based on the Omissions;

(g)    whether the Omissions are material to a reasonable consumer;

(h)    whether the Omissions are likely to deceive a reasonable consumer;

(i)    whether Defendant had knowledge that the Omissions were material and false, deceptive, and/or misleading;

(j)    whether Defendant breached its duty of care;

(k)    whether Defendant breached its duty to disclose;

(l)    whether Defendant violated the laws of the State of Illinois;

(m)    whether Defendant breached its implied warranties;

(n)    whether Defendant engaged in unfair trade practices;

(o)    whether Defendant engaged in false advertising;

47

FILED DATE: 5/3/2024 3:00 PM    2024CH04116

(p)    whether Defendant made fraudulent omissions;

(q)    whether Plaintiff and Class members' claims are tolled based on Defendant's fraudulent concealment;

(r)    whether Plaintiff and members of the Class are entitled to actual, statutory, and punitive damages; and

(s)    whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

172.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harm are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

173.    Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

174.    Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

175.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

176.    Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

177.    As a result of the foregoing, class treatment is appropriate.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

## CLAIMS FOR RELIEF

### COUNT I
**Violations of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §505/1, *et seq*., Against Defendant on Behalf of Plaintiff and the Class**

178.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

179.    Plaintiff and the Class are "persons" within the meaning of 815 Illinois Compiled Statute §505/1(c).

180.    Defendant is a "person" within the meaning of 815 Illinois Compiled Statute §505/1(c).

181.    The Infant Formulas are "merchandise" within the meaning of 815 Illinois Compiled Statute §505/1(b).

182.    There was a sale of merchandise within the meaning of 815 Illinois Compiled Statute §505/1(d).

183.    The conduct described herein constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Compiled Statute §505/1, *et seq*. ("ICFA").

184.    Defendant's packaging represented that the Infant Formulas were healthy, nutritious, and safe for consumption and that the Infant Formulas were manufactured with proper quality control measures; however, Defendant failed to mention or disclose the Infant Formulas contained (or had a material risk of containing) Heavy Metals.

185.    Defendant made partial statements on the Infant Formulas' packaging that gave a misleading impression to reasonable consumers, including Plaintiff and the Class members, without further information because the Omissions were not disclosed.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

186.     Defendant engaged in a deceptive act or practice in violation of ICFA by knowingly concealing, omitting, or failing to disclose the Infant Formulas' true quality, nature of ingredients, and suitability for consumption by infants with no development or health risks.

187.     Defendant's deceptive acts and practices are continuing.

188.     Defendant intended for Plaintiff and the Class members to rely on and accept as true the Products' packaging and Omissions in deciding whether to purchase the Infant Formulas, and at what price.

189.     Defendant's concealment, Omissions, and other deceptive conduct were likely to deceive consumers with respect to the Infant Formulas' quality, nature of ingredients, and suitability for consumption by infants with no development or health risks.

190.     Defendant's concealment, Omissions, and other deceptive conduct were likely to cause consumers to purchase and/or overpay for the Infant Formulas.

191.     Defendant's concealment, Omissions, and other deceptive acts occurred before Plaintiff and the Class decided to purchase the Infant Formulas.

192.     Defendant's concealment, Omissions, and other deceptive conduct did in fact deceive Plaintiff and the Class with respect to the Infant Formulas' quality, nature of ingredients, and suitability for consumption by infants with no development or health risks.

193.     Defendant's concealment, Omissions, and other deceptive conduct did in fact deceive and cause Plaintiff and the Class members to purchase and overpay for the Infant Formulas.

194.     Defendant's concealment, Omissions, and other deceptive conduct described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

195.     The facts concealed, omitted, or not disclosed by Defendant, including that the Infant Formula contained (or had a material risk of containing) Heavy Metals that do not conform to the packaging, are material facts because Plaintiff and any reasonable consumer would have considered those facts important in deciding whether to purchase the Infant Formulas, and at what price.

196.     If Plaintiff and the Class members had known that the Infant Formula contained (or had a material risk of containing) Heavy Metals, they would not have paid the price premium they paid for the Infant Formulas.

197.     If Plaintiff and the Class members had known that the Infant Formulas did not in fact match the quality and nature of ingredients described above, they would not have purchased the Infant Formulas at all.

198.     As a result of Defendant's conduct, Plaintiff and the Class members have suffered actual damages by: (1) paying a premium price for Products they reasonably believed did not contain (or have a material risk of containing) Heavy Metals; (2) purchasing Products they would not have purchased had the Omissions been disclosed; and/or (3) receiving Products that were worthless because they contained or risked containing Heavy Metals.

199.     As a result of Defendant's conduct, Plaintiff and the Class members have suffered actual damages in that they purchased Infant Formulas that they would not have purchased at all if they had knowledge of the Omissions.

200.     As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of Defendant set forth above, Plaintiff and the Class members are entitled to actual damages, compensatory damages, penalties, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.

FILED DATE: 5/3/2024 3:00 PM  2024CH04116

201.    Defendant's deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously, entitling Plaintiff and the Class members to an award of punitive damages.

## COUNT II
**Breach of Implied Warranty of Merchantability Against
Defendant on Behalf of Plaintiff and the Class**

202.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

203.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class.

204.    There was a sale of goods from Defendant to Plaintiff and the members of the Class.

205.    At all times mentioned herein, Defendant manufactured and sold the Infant Formulas and, prior to the time the Infant Formulas were purchased by Plaintiff and the Class, impliedly warranted that the Infant Formulas were of merchantable quality and fit for their ordinary use (consumption by infants with no development or health risks).

206.    Plaintiff and the Class relied on these implied warranties when they purchased the Infant Formulas.

207.    The Infant Formulas were not fit for their ordinary use (consumption by infants with no development or health risks) as they contained (or had a material risk of containing) Heavy Metals that do not conform to the packaging.

208.    These promises became part of the basis of the bargain between Defendant and Plaintiff and members of the Class, and thus constituted implied warranties.

209.    Defendant breached the implied warranties by selling Infant Formulas that contain (or risk containing) Heavy Metals.

FILED DATE: 5/3/2024 3:00 PM    2024CH04116

210.    Defendant was on notice of this breach as it was aware of the inclusion (or risk) of Heavy Metals.

211.    Privity exists because Defendant impliedly warranted to Plaintiff and the members of the Class through the Products' packaging, that the Infant Formulas were healthy, nutritious, and safe for consumption ; however, Defendant failed to mention or disclose the Infant Formulas contained (or had a material risk of containing) Heavy Metals.

212.    As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff and the Class suffered actual damages by: (1) paying a premium price for Products they reasonably believed did not contain (or have a material risk of containing) Heavy Metals; (2) purchasing Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving Products that were worthless because they contained or risked containing Heavy Metals.

213.    Plaintiff, on behalf of herself and the Class, seeks actual damages for Defendant's failure to deliver goods that conform to their implied warranties and resulting breach.

### COUNT III
**Fraudulent Misrepresentation by Omission Against Defendant
on Behalf of Plaintiff and the Class**

214.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

215.    Plaintiff and members of the Class were buyers and Defendant was a seller in a commercial exchange.

216.    Plaintiff and the Class were ordinary non-business consumers who trusted Defendant to manufacture, distribute, market, and sell Infant Formulas that did not contain (or have a material risk of containing) Heavy Metals.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

217.    As infant formulas manufacturers, Defendant is in a special position of trust upon which consumers rely.

218.    Defendant knowingly and actively concealed the Omissions from Plaintiff and the Class.

219.    Defendant intentionally, knowingly, and/or recklessly made these Omissions to induce Plaintiff and the Class to purchase the Infant Formulas.

220.    Defendant knew or should have known the Infant Formulas contained (or had a material risk of containing) Heavy Metals.

221.    Defendant allowed its packaging to intentionally mislead consumers, such as Plaintiff and the Class.

222.    Defendant's packaging did not disclose the Omissions with the intent to deceive and defraud consumers, such as Plaintiff and the Class.

223.    Defendant intended for Plaintiff and the Class to rely on the Omissions. Defendant knows its customers trust the quality of its Products and that it is in a special position of trust with the public.

224.    Defendant knows reasonable consumers expected the Infant Formulas to not contain (or have a material risk of containing) Heavy Metals.

225.    Defendant also knows that reasonable consumers seek out and wish to purchase infant formulas that possess high quality ingredients free of toxins, contaminants, or chemicals, and that these consumers will pay for infant formulas they believe possess these qualities.

226.    Defendant knew that Plaintiff and the Class were ignorant of the Omissions.

227.    Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn or discover the Omissions.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

228.     Defendant was under a duty to disclose the Omissions regarding the Infant Formulas to Plaintiff and the Class because:

(a)     Defendant was in possession of special facts that could not have been discovered by Plaintiff and the Class.

(b)     Defendant's packaging was misleading to consumers by failing to disclose the Omissions.

(c)     Based on Defendant's partial statements on the Infant Formulas' packaging that gave a misleading impression to reasonable consumers without further information about the Omissions, Defendant assumed the obligation to make a full and fair disclosure of the whole truth.

229.     The Omissions were material facts to Plaintiff and the Class, as Plaintiff and the Class relied on the Omissions when purchasing the Infant Formulas.

230.     Plaintiff and the Class had a right to rely on Defendant's packaging as the truth because customers like Plaintiff and the Class trust the quality of Defendant's Products and they expect the Infant Formulas do not contain (or have a material risk of containing) Heavy Metals.

231.     Plaintiff and the Class did in fact rely on the material Omissions and purchased the Infant Formulas to their detriment. Given the materiality of the Omissions, Plaintiff's and the Class's reliance on the Omissions was justifiable.

232.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered actual pecuniary damages by: (1) paying a premium price for Products they reasonably believed did not contain (or have a material risk of containing) Heavy Metals; (2) purchasing Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving Products that were worthless because they contained or risked containing Heavy Metals.

FILED DATE: 5/3/2024 3:00 PM 2024CH04116

233.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## <u>COUNT IV</u>
**Fraud by Omission Against Defendant on Behalf of Plaintiff
and the Class**

234.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

235.    Defendant knew or should have known the Infant Formulas contained (or had a material risk of containing) Heavy Metals.

236.    Plaintiff and the Class and Defendant acted within the context of a business transaction when Plaintiff and the Class purchased Defendant's Infant Formulas for household or business use, and not for resale.

237.    Plaintiff and the Class were ordinary non-business consumers.

238.    Defendant actively and knowingly concealed from and failed to disclose to Plaintiff and the Class that the Infant Formulas contained undisclosed levels of (or had a material risk of containing) Heavy Metals that do not conform to the Products' packaging.

239.    As an infant formula manufacturer, Defendant is in a special position of trust upon which consumers rely.

240.    Defendant was under a duty to disclose to Plaintiff and the Class the true quality, characteristics, nature of the ingredients, and suitability of the Infant Formulas because:

    (a)    Defendant was in a superior position to know the true state of facts about its Products;

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

    (b)    Defendant was in a superior position to know the nature of the ingredients, characteristics, and suitability of the Infant Formulas for consumption by infants with no development or health risks; and

    (c)    Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn about the Omissions without Defendant disclosing it on the Infant Formulas' packaging.

241.    Defendant knows its customers trust the quality of its products and expect Defendant's Infant Formulas to be free of the risk or presence of Heavy Metals. Defendant also knows that consumers seek out and wish to purchase infant formulas that possess high quality ingredients free of toxins, contaminants, or chemicals, and that these consumers will pay for infant formulas that they believe possess these qualities.

242.    Due to the Omissions on the Infant Formulas' packaging, Defendant had a duty to disclose the whole truth that the Infant Formula contained (or had a material risk of containing) Heavy Metals.

243.    Defendant acted in bad faith when it intended that Plaintiff and the Class would rely on the Omissions when purchasing the Infant Formulas, unaware of the undisclosed material facts.

244.    Defendant was under a duty to disclose the Omissions because Defendant undertook the disclosure of information about the Infant Formulas on the Infant Formulas' packaging.

245.    Defendant failed to discharge its duty to disclose the Omissions.

246.    Defendant allowed the Omissions on the Products' packaging to intentionally mislead consumers, such as Plaintiff and the Class.

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

247.   The facts concealed, omitted, or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered the Omissions material when deciding whether to purchase the Infant Formulas.

248.   Defendant knew or should have known the Omissions were material to Plaintiff's and the Class's decisions to purchase the Infant Formulas and would induce Plaintiff and the Class to purchase the Infant Formulas.

249.   Defendant intentionally concealed the presence or material risk of Heavy Metals in the Infant Formulas with the intent to defraud and deceive Plaintiff and the Class.

250.   Plaintiff and the Class justifiably relied on Defendant's Omissions to their detriment. The detriment is evident from the true quality, characteristics, and nature of the ingredients of the Infant Formulas, which is misleading when compared to the Infant Formulas' packaging and represented by Defendant and inherently unfair to consumers of the Infant Formulas, such as Plaintiff and the Class.

251.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered actual damages by: (1) paying a premium price for Products they reasonably believed did not contain (or have a material risk of containing) Heavy Metals; (2) purchasing Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving Products that were worthless because they contained or risked containing Heavy Metals.

252.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT V**
**Unjust Enrichment Against Defendant on Behalf of Plaintiff and the Class**

253.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

FILED DATE: 5/3/2024 3:00 PM 2024CH04116

254. Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of the Infant Formulas. Defendant knowingly and willingly accepted and enjoyed these benefits.

255. Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the Infant Formulas would not contain (or have a material risk of containing) Heavy Metals. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

256. Defendant was obligated to disclose the Omissions in the Infant Formulas because (1) it had exclusive knowledge that the Infant Formulas contained (or had a material risk of containing) Heavy Metals; (2) the Omissions were not known or reasonably accessible to Plaintiff and the Class; (3) Defendant actively concealed the Omissions; and (4) Defendant made partial statements on the Infant Formulas' packaging that gave a misleading impression to Plaintiff and the Class and reasonable consumers without further information because the Omissions were not disclosed.

257. Defendant's acceptance and retention of the benefits of the payments from Plaintiff and the Class under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Class.

258. Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

259. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as to each and every count, including:

A.　　An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.　　An order enjoining Defendant from selling the Infant Formulas until the levels of Heavy Metals are not detectable;

C.　　An order enjoining Defendant from selling the Infant Formulas until the Omissions are disclosed;

D.　　An order enjoining Defendant from selling the Infant Formulas in any manner suggesting or implying that they are healthy and made from nutritious ingredients;

E.　　An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

F.　　An order awarding declaratory relief, and any further injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's conduct;

G.　　An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of Illinois laws, plus pre- and post-judgment interest thereon;

H.　　An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

I.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

J.      An order requiring Defendant to pay punitive damages on any count so allowable;

K.      An order awarding attorneys' fees and costs to Plaintiff and the Class; and

L.      An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 3, 2024                    **WEXLER BOLEY & ELGERSMA LLP**

By: /s/ Kara A. Elgersma

KENNETH A. WEXLER
KARA A. ELGERSMA
ELENA ENDRUKAITE
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
kaw@wbe-llp.com
kae@wbe-llp.com
ee@wbe-llp.com
Attorney Code: 99616

**LOCKRIDGE GRINDAL NAUEN PLLP**
ROBERT K. SHELQUIST
REBECCA A. PETERSON
KRISTA K. FREIER
CATHERINE A. PETERSON
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com
kkfreier@locklaw.com
capeterson@locklaw.com

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

**GUSTAFSON GLUEK, PLLC**
DANIEL E. GUSTAFSON
CATHERINE SUNG-YUN K. SMITH
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
csmith@gustafsongluek.com

**GEORGE FELDMAN MCDONALD, PLLC**
LORI G. FELDMAN
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
Facsimile: (888) 421-4173
LFeldman@4-Justice.com
eService@4-Justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
DAVID J. GEORGE
BRITTANY L. SACKRIN
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
Facsimile: (888) 421-4173
DGeorge@4-Justice.com
BSackrin@4-Justice.com
eService@4-Justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
JANINE L. POLLACK
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (917) 983-2707
jpollack@4-Justice.com

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

**SALTZ MONGELUZZI & BENDESKY, PC**
SIMON B. PARIS, ESQ.
PATRICK HOWARD, ESQ.
1650 Market Street, 52nd Floor
One Liberty Place
Philadelphia, PA  19103
Telephone: (215) 496-8282
Facsimile: (215) 754-4443
sparis@smbb.com
phoward@smbb.com

**THRONDSET MICHENFELDER, LLC**
JASON GUSTAFSON
222 South Ninth Street, Suite 1600
Minneapolis, MN 55402
Telephone: (763) 515-6110
jason@throndsetlaw.com

*Counsel for Plaintiff and the Putative Class*

FILED DATE: 5/3/2024 3:00 PM   2024CH04116

**Chancery Division Civil Cover Sheet**
**General Chancery Section**                                          (12/01/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

BIANCA RAYA

_____
                                                      Plaintiff

                        v.                                            Case No: _____

MEAD JOHNSON NUTRITION COMPANY, et al.
_____
                                                      Defendant

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division.  The information contained herein is for administrative purposes only.  Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | |
|---|---|---|
| 0005 | ☐ | Administrative Review |
| 0001 | ☑ | Class Action |
| 0002 | ☐ | Declaratory Judgment |
| 0004 | ☐ | Injunction |
| | | |
| 0007 | ☐ | General Chancery |
| 0010 | ☐ | Accounting |
| 0011 | ☐ | Arbitration |
| 0012 | ☐ | Certiorari |
| 0013 | ☐ | Dissolution of Corporation |
| 0014 | ☐ | Dissolution of Partnership |
| 0015 | ☐ | Equitable Lien |
| 0016 | ☐ | Interpleader |

| | | |
|---|---|---|
| 0017 | ☐ | Mandamus |
| 0018 | ☐ | Ne Exeat |
| 0019 | ☐ | Partition |
| 0020 | ☐ | Quiet Title |
| 0021 | ☐ | Quo Warranto |
| 0022 | ☐ | Redemption Rights |
| 0023 | ☐ | Reformation of a Contract |
| 0024 | ☐ | Rescission of a Contract |
| 0025 | ☐ | Specific Performance |
| 0026 | ☐ | Trust Construction |
| 0050 | ☐ | Internet Take Down Action (Compromising Images) |

☐ Other (specify) _____

◉ Atty. No.: 99616 _____     ○ Pro Se 99500

Atty Name: Kara A. Elgersma/Wexler Boley & Elgermsa LLP

Atty. for: Plaintiff, Bianca Raya

Address: 311 S. Wacker Drive, Suite 5450

City: Chicago                    State: IL

Zip: 60606

Telephone: 312-346-2222

Primary Email: kae@wbe-llp.com

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org